**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**ST. JOSEPH DIVISION**

KERRIE GENE MICK,            )
                               )
         Plaintiff,         )
                               )
      v.                   )      Case No. 14-6037-CV-SJ-BP
                               )
WES RAINES, *et al*.,         )
                               )
         Defendants.     )

**ORDER AND OPINION GRANTING MOTION AND SUPPLEMENTAL MOTION FOR**
**SUMMARY JUDGMENT FILED BY SAMUEL WOOLSEY, JASON KEOUSH, AND**
**DEVIN LACEY**

      Plaintiff has sued, among others, three officers working for the Daviess/DeKalb County

Regional Jail ("the Regional Jail"), alleging violations of his civil rights. The three officers[1]

have collectively filed a motion for summary judgment, (Doc. 126), and (at the Court's

direction) a supplemental motion for summary judgment. (Doc. 142.) Both motions are

**GRANTED**.

**I. BACKGROUND**

      None of the three Defendants is named in his individual capacity; thus, they are all

deemed to be sued in their official capacities only. *See Baker v. Chisom,* 501 F.3d 920, 923 (8th

Cir. 2007). Plaintiff concedes this point: he does not dispute that he has not sued the named

defendants individually and he characterizes his claims as "official-capacity claims." (*E.g.,* Doc.

Doc. 136, pp. 4, 10.) "[T]he real party in interest in an official-capacity suit is the governmental

---

[1] Officer Samuel Woolsey, Officer Samuel Keough, and Lieutenant Devin Lacy.

entity and not the named official." *Baker,* 501 F.3d at 925 (quotations omitted).  Therefore, the actual defendant is the Regional Jail.[2]

Except in one context, the Regional Jail does not contend that it is entitled to summary judgment because Plaintiff's civil rights were not violated.  Instead, the Regional Jail primarily contends it is entitled to summary judgment because the Record establishes that the additional requirements for imposing liability on a municipality for its employees' constitutional violations are not present.  In light of the issues raised and the manner in which they have been discussed,[3] an understanding of the Record (both what it reveals and what it does not) is more important than the legal analysis.  Therefore, in discussing the facts the Court will address the parties' competing views as to what is (and is not) contained in the Record.  In doing so, the Court will focus on the facts related to the Regional Jail; matters related to other Defendants will be discussed only as necessary.

### A.  Plaintiff's Allegations

On February 24, 2012, deputies from Clinton County arrested Plaintiff and took him to the Clinton County Jail.  Plaintiff alleges he was beaten by approximately five law enforcement officers and that he "believes" that at least one officer from the Regional Jail (who was there to transport Plaintiff to the Regional Jail) was among the assailants.  (Doc. 80, ¶¶ 22-23.)  "The injuries were so severe, that Plaintiff's arm was broken during the attack.  Plaintiff screamed for

---

[2] The Regional Jail is alleged to be a "joint venture between Daviess [County] and DeKalb County."  (Doc. 80, ¶ 26.)  Defendants agree with this allegation.  (Doc. 84, ¶ 26; Doc. 85, ¶ 26.)

[3] The Regional Jail argues that Plaintiff's responses to the proffered uncontroverted facts do not comply with Local Rule 56.1(b) for a variety of reasons, including because they are argumentative, not responsive, and not always supported by citations to the record.  While the Regional Jail may be correct in contending that the Court is permitted to deem its uncontroverted facts as admitted, *see Jones v. United Parcel Serv., Inc.,* 461 F.3d 982, 990 (8th Cir. 2006), the Court elects not to follow that course.

2

help because the Jailers were attempting to remove a ring from his finger that he did not want to release." (Doc. 80, ¶ 25.)

Plaintiff was transferred to the Regional Jail later that same evening, arriving at approximately 2:36 a.m. (Doc. 80, ¶ 44.) Plaintiff "was thrown on the cement floor on his left shoulder by one of the named Deputies from the Regional Jail." (Doc. 80, ¶ 26.) He then complained of pain in his left shoulder. The Second Amended Complaint also alleges that he was sprayed with mace, (Doc. 80, ¶ 26), but in his deposition he admitted that he was not sprayed with mace by anyone at the Regional Jail. (Doc. 163-1.)

Lieutenant Lacy "instructed the officers to contact the 'on call doctor', Defendant Dr. Glynn." (Doc. 80, ¶ 45.) Dr. Glynn "instructed the officer that 'as long as there were no protruding bones or bleeding, that he could wait to be seen by Nurse Gaunt on Monday." (Doc. 80, ¶ 45.)[4] Dr. Glynn's instructions notwithstanding, Plaintiff was taken to Cameron Hospital, and later in the day he was released from custody. (Doc. 80, ¶¶ 27-28, 48.)

The Second Amended Complaint asserts the following claims against the Regional Jail:[5]

---

[4] The Court takes judicial notice of the fact that February 25, 2012, was a Saturday.

[5] The Second Amended Complaint asserts violations of Plaintiff's rights under both the United States and Missouri Constitutions. (Doc. 80, ¶ 1.) The Regional Jail argues that Missouri law does not provide a private right of action for violation of rights bestowed by Article I, section 15 of the Missouri Constitution. (*E.g.,* Doc. 127, p. 8.) The Regional Jail's argument is supported by decisions from Missouri courts. *E.g., Collins-Camden P'ship v. County of Jefferson,* 425 S.W.3d 210, 214 (Mo. Ct. App. 2014). Plaintiff did not respond to this argument as it relates to the Regional Jail, but in connection with the same argument raised by Clinton County, Plaintiff conceded that he cannot recover monetary damages. He nonetheless contended that he is entitled to injunctive relief, (Doc. 148, p. 26), even though the Second Amended Complaint does not ask for injunctive relief. However, Plaintiff cites no Missouri permitting a cause of action seeking an injunction to enforce this provision of the Missouri Constitution, and the case he cites, *Disabled Citizens Alliance for Independence, Inc. v. Pratte,* 2008 WL 4488972 (E.D. Mo. 2008), does not really discuss the issue. Moreover, Missouri courts have precluded claims for damages because this provision of the Missouri Constitution is not self-executing, *e.g., Moody v. Hicks,* 956 S.W.2d 398, 402 (Mo. Ct. App. 1997), and this rationale would apply to claims for equitable relief just as well as to claims for damages. Regardless, Plaintiff has not contended or demonstrated that he is likely to personally come in contact with officers from the Regional Jail in the future, so he has no standing to pursue injunctive relief. *E.g., Los Angeles v. Lyons,* 461 U.S. 95, 102 (1983) (plaintiff did not have standing to enjoin police use of chokehold because the fact that he was subjected to chokeholds in the past did not establish that one would be administered in the future).

3

- Count I – Excessive Force. Count I is asserted against the Regional Jail for the incidents at both the Clinton County Jail and the Regional Jail.

- Count III – Failure to Intervene. This claim asserts that the Regional Jail violated the Constitution when some of the officers failed to prevent other officers (both Clinton County Deputies and officers from the Regional Jail) from using excessive force.

- Count IV – Conspiracy. This claim alleges the Regional Jail conspired with Clinton County to violate Plaintiff's constitutional rights.

- Count V – Deliberate Indifference to Substantial and Serious Medical Needs. Count V refers to Officers Woolsey and Keough, Lieutenant Lacy, and Dr. Glynn, but focuses almost exclusively on Dr. Glynn's actions. (Doc. 80, ¶ 79.)[6]

## B. Facts Related to the Regional Jail's Arguments

The Court's discussion of the Record will be aided by summarizing the law that governs Plaintiff's claims. In order for Plaintiff to prevail, there must first be a violation of the plaintiff's constitutional rights. *E.g., McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005). But, even if Plaintiffs' rights were violated by Regional Jail officers, the Regional Jail's liability would not be established by that fact alone because municipalities and similar governmental entities cannot be held liable on a theory of respondeat superior. *Monell v. Department of Social Services,* 436 U.S. 658, 692-95 (1978). "Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Corwin v. City of Independence., MO.*, 829 F.3d 695, 699 (8th Cir. 2016) (quotations and citations omitted). As

---

[6] Counts II and VI are not listed because the only Defendant in those counts is Clinton County.

Case 5:14-cv-06037-BP   Document 168   Filed 02/23/17   Page 4 of 20

will be discussed, Plaintiff's primary argument is that Clinton County maintained unofficial customs that violated the Constitution. To establish a custom, Plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't,* 725 F.3d 825, 828 (8th Cir. 2013); *see also Jane Doe A v. Special Sch. Dist. of St. Louis County,* 910 F.2d 642, 646 (8th Cir. 1990). Therefore, the Court's analysis of the Record will address any evidence that (1) there was a widespread, persistent pattern of unconstitutional conduct and (2) policymakers were deliberately indifferent to any such pattern.

The Regional Jail contends (and Plaintiff agrees) that during the relevant time period Bob Gray had final policymaking authority for the Regional Jail. Gray is deceased, and the Regional Jail relies on sworn declarations from Edmon Howard, who was Gray's assistant and successor,[7] to discuss its policies and practices in four areas: (1) the proper use of force, (2) deputies' duties to intervene to prevent the use of excessive force, and (3) the provision of medical care for those held at the Regional Jail. Howard also discusses two additional topics: training provided to deputies and agreements reached with Clinton County. The Court's discussion of the Record will be organized around these five areas.

---

[7] Plaintiff contends that Howard's declarations are not based on his personal knowledge, (*e.g.,* Doc. 157, pp. 13-16), but he does nothing more than describe the affidavit as such. In contrast, Howard declares that his statements are based on "personal, first-hand knowledge of the facts" he describes, which is buttressed by the fact that Howard was Gray's assistant when Gray was the Regional Jail's Administrator and became the Administrator after Gray passed away. (Doc. 143-1, ¶¶ 1-2.) Moreover, as the Administrator, Howard has access to the Regional Jail's records. (Doc. 143-1, ¶ 4.)

### *1. Proper Use of Force*

Howard avers that the Regional Jail has a written policy regarding the use of force, which limits deputies to using only "the amount of force, reasonably necessary, to overcome the resistance offered, subdue an individual detainee or restore order to a disruptive group, and/or accomplish the lawful performance of duty while protecting the officer and the public." (Doc. 143-1, ¶ 5.) The policy further required that whenever force was used, the officers were to complete a written report, all such reports were to be reviewed by Shift Commanders, and the Jail Administrator was to be notified. (Doc. 143-1, ¶ 8.) The Jail Administrator was to investigate allegations of improper use of force, and impose discipline if improper force was utilized. (Doc. 143-1, ¶¶ 9-12.) Under this policy, there were officers who were disciplined for improper use of force. (Doc. 143-1, ¶¶ 13-15.)

Plaintiff does not dispute that these policies exist. Instead, he attempts to create a factual dispute by contending that the policies are not actually followed; however, his effort to do so fails for a variety of reasons.

Plaintiff relies extensively on affidavits submitted by Troy Thompson, Michael Stewart, and Steven Turner,[8] all of whom have been incarcerated at the Regional Jail. He characterizes the affidavits as establishing very broad propositions about the practices at the Regional Jail, but the affidavits do not support the propositions advanced. For instance, he relies on one or more of the affidavits for the following facts:

---

[8] The Regional Jail incorporates Clinton County's argument that Stewart and Turner were not disclosed as potential witnesses, so their affidavits should not be considered. (Doc. 163, p. 5 n.2.) Rule 37(c)(1) permits use of testimony from an undisclosed witness if the failure to disclose is "substantially justified or is harmless." The Court cannot fairly determine whether the nondisclosure was substantially justified or harmless without soliciting further input from Plaintiff, and under the circumstances the Court discerns no need to prolong consideration of the Regional Jail's motions.

- "[T]he practice at the . . . jail is to use force not for the purposes set forth, but as punishment for those that express opinions or seek redress for grievances, including medical attention." (Doc. 157, p. 2.)

- Jailers used mace indiscriminately. (Doc. 157, pp. 3, 14.)

- "[T]he officers on duty routinely employ maximum force against detainees and citizens." (Doc. 157, p. 4.)

Examination of the affidavits reveals no proper support for these assertions, and further demonstrates their limited value. Thompson states that he has been in the Regional Jail "on 4-5 occasions between 2011-2013" and "the jailers were 'mace happy' spraying mace into the jail cells of inmates, including myself, for no real reason. Spraying mace was a frequent event in the" Regional Jail. (Doc. 157-7, ¶ 7.) He also states that he "know[s] that the jailers at the [Regional Jail] would frequently 'rough up' or attack inmates. I have seen that happen on several occasions." (Doc. 157-7, ¶ 8.) There are two critical problems with Thompson's statements that undermine their probative value in this case. First, he provides no details about any of these incidents. The mere fact that mace was utilized or force was employed does not mean that the Constitution was violated. Second, he does not provide sufficient information to ascertain the frequency with which these events occurred.

Stewart's affidavit[9] says nothing about the Regional Jail; it only reports events at the Clinton County Jail, and does not contain anything that supports Plaintiff's characterization of practices at the Regional Jail. (Doc. 135-6.) Therefore, it has no bearing on the issues related to the Regional Jail.

[9] Plaintiff identifies Stewart's affidavit as Exhibit 5. (*E.g.,* Doc. 157, p. 10; Doc. 157-1.) Exhibit 5 is not Stewart's affidavit, and his affidavit was not submitted with Plaintiff's responses to the Regional Jail's original motion or its supplemental motion. The Court has relied on Stewart's affidavit Plaintiff submitted in connection with his response to Clinton County's Supplemental Motion for Summary Judgment.

Turner states that he filed a grievance over his treatment at the Regional Jail and as a result met with Gray. He does not specifically identify the nature of his grievance, however. It may be inferred that the grievance related to jailers' use of mace, because Turner alleges that jailers "sprayed mace into the cells as a way to control inmates and as a form of punishment. When they started spraying mace, the jailers or deputies would frequently empty an entire can of mace on one person or in one cell." (Doc. 157-2, ¶ 7.) Turner also claims that inmates who requested medical attention were frequently maced instead. (Doc. 157-2, ¶ 8.) As with Thompson, Turner does not describe the frequency of these incidents or the period of time over which they occurred. Also, Turner does not describe any force that was employed other than the use of mace.

Plaintiff also points to force that was utilized on him to establish the Regional Jail's policies are regularly ignored. Specifically, he points to the fact that the incident at the Clinton County Jail was precipitated by Clinton County Deputy John Patterson's accusation that Plaintiff took a "bladed stance," then points to Stewart's affidavit to establish this is an "excuse . . . routinely used by [Clinton County] jail personnel to justify otherwise unjustified use of force." (Doc. 157, p. 2.) As stated above, however, Stewart's affidavit does not say anything about the Regional Jail, so it does not establish the Regional Jail's practices. Moreover, one (or even two) incidents do not establish a practice.

Plaintiff contends that while the Regional Jail's policy may require that uses of force be reported and that improper uses of force be investigated and result in discipline, the actual practices of the Regional Jail are different. His argument is that there is no evidence that the Use of Force Reports completed in this case were reviewed, and that it is unlikely that they were because the reports are different and would have obviously demonstrated the need for an

investigation. (Doc. 157, p. 9.) However, even if no investigations or discipline occurred in this case,[10] Plaintiff has not presented any facts demonstrating that investigations are routinely not conducted or that the Regional Jail's investigatory and discipline policies are routinely ignored.[11]

### 2. Duty to Intervene to Prevent the Use of Excessive Force

Howard's affidavit states that "officers of the [Regional Jail] have received instruction that members of the public are to be protected from inappropriate force from any source." (Doc. 143-1, ¶ 17.) However, the Regional Jail has not "received any confirmed information that an officer of the [Regional Jail] failed to intervene to prevent physical injury inflicted by another officer." (Doc. 143-1, ¶ 17.)

Plaintiff controverts these facts only by contending that neither Woolsey nor Lacy intervened to protect him from unconstitutional force. (Doc. 157, pp. 7, 13, 15.) Plaintiff does not identify any other instances in which Regional Jail personnel allegedly failed to intervene to prevent unconstitutional use of force.

### 3. Provision of Medical Care

The Regional Jail's Use of Force Policy included provisions regarding medical care. The policy required officers to make medical treatment available when (1) it was requested, (2) a person complained of injury or continued pain or showed signs of "unusual distress," (3) an injury was observed or suspected, or (4) a supervisor directed that medical care be provided. (Doc. 143-1, ¶ 7.) If an inmate "had a serious medical need, appropriate medical assistance

---

[10] Plaintiff asserts that "[n]o one involved in the Mick, Stewart, or Turner situation was investigated or disciplined," but provides no citation for this fact. (Doc. 157, p. 10.) Moreover, Stewart did not describe any misconduct by personnel at the Regional Jail, so the lack of discipline for those involved in his situation is irrelevant.

[11] Plaintiff disputes Howard's sworn statement that discipline is (and has been) meted out when excessive force is utilized by contending that "[d]espite requests regarding these issues during [the] discovery process, no information concerning other situations were provided." (Doc. 157, p. 11.) This response is insufficient to create a factual dispute. Moreover, Plaintiff has not identified the discovery requests that were designed to obtain this information, nor did he seek relief from the Court for the Regional Jail's failure to respond.

would be provided at the jail for the inmate, or the inmate would be taken to a local healthcare provider." (Doc. 143-1, ¶ 20.) Howard states that "it does not appear Mr. Gray ever received any confirmed information that inmates of the [Regional Jail] were not receiving appropriate medical care for serious medical needs." (Doc. 143-1, ¶ 18.)

Plaintiff's concedes that the policy exists but contends that it has never been enforced. (Doc. 157, p. 4.) To support this claim he primarily relies on the events of this case. (Doc. 157, pp. 7-8.) He augments the events of his case with Turner's affidavit, which he describes as advising Grey "[t]hat a practice to deny medical care . . . existed within his jail." (Doc. 157, pp. 13-14.) Turner's affidavit does not support this broad proposition: it says "that if inmates would ask for medical attention; they would frequently not get the attention they requested and further . . . they would get maced by the deputies for making the request." (Doc. 157-2, ¶ 8.) However, Turner's affidavit does not specify the number or details of any such incidents, and does not establish that any of the inmates had a serious medical need for which medical care was denied.

Moreover, Plaintiff admits that Dr. Glynn was called in this case. He included such allegations in his Second Amended Complaint. (Doc. 80, ¶ 79.) Plaintiff's response attempts to qualify his own allegation, contending that the Regional Jail "was not justified in following the advice of Dr. Glynn to let Mick continue without medical care, if in fact that was said." (Doc. 157, p. 16.) However, Plaintiff offers no support from the Record that would suggest (1) Dr. Glynn was not called and (2) Dr. Glynn's advice – to wait until the following Monday – was not exactly what Plaintiff described in his Second Amended Complaint.

### *4. Training*

Howard's affidavit states that "all officers of the [Regional Jail], including the three Daviess-DeKalb officers identified in Plaintiff's Second Amended Complaint, received training

regarding use of force, medical care of inmates, and on-the-job training to acquaint them with the policies and procedures of the Regional Jail when they were first hired." (Doc. 143-1, ¶ 16.) Plaintiff's efforts to create a factual dispute as to whether the officers were trained is not supported by the Record.

First, Plaintiff alleges that "[m]any of the employees were not POST certified officers, had never gone through the academy and were only given cans of mace to keep order. As a result of this lack of training, mace was used indiscriminately in the pods of detainees, causing needless pain." (Doc. 157, p. 3.) However, Plaintiff does not cite any competent evidence from the Record to support these facts. He cites "Ex. #2 Turner Petition." Exhibit #2 is Turner's affidavit, and while Turner asserts that the officers at the Regional Jail "were . . . not trained on how to use force in that jail," (Doc. 157-2, ¶ 7), he does not explain his basis for knowing this fact; the statement is an unsupported supposition on his part. Exhibit #3 is a Petition Turner filed in state court in 2014, (Doc. 157-3); it does not say anything about training, but even if it did it would not be competent evidence on the issue. Finally, even if it is true that officers at the Regional Jail do not receive POST training[12] or "go[ ] through the academy," this fact would not contradict Howard's sworn statement that the officers are trained. It is entirely possible to receive training outside of POST or the academy.

Second, Plaintiff points to deposition testimony from Woolsey, Keough, and Lacy, but his representations about their testimony are not accurate. He cites pages 16 to 17 of Keough's deposition for the proposition that "[t]he jailers at [the Regional Jail] had no training in use of force." (Doc. 157, p. 3.) However, on those pages of his deposition Keough testified that he was trained. (Doc. 157-8, pp. 2-3.) Plaintiff cites pages 51 and 52 of Woolsey's deposition for the

---

[12] "POST" is an acronym for Peace Officers Standards and Training, and is a program created by state law. (Doc. 141-1, ¶ 15; *see also, e.g.,* Mo. Rev. Stat. §§ 590.010(4), 590.030 - .050.)

11

proposition that "[n]o training was afforded the officers at [the Regional Jail] that would give them an understanding of the proper use of force and the circumstances in which it was justified." (Doc. 157, p. 12; *see also* Doc. 157, p. 13.) However, Woolsey did not testify that he was not trained; to the contrary, he testified that he was. (Doc. 157-6, p. 8.) Finally, Plaintiff contends that Lacy testified that he was "not trained in use of force," (Doc. 157, p. 13), but the portions of Lacy's deposition that Plaintiff cites discusses the additional training he received upon being promoted to Lieutenant; the excerpts do not contain any questions designed to ascertain the full extent of Lacy's training. (Doc. 157-13, pp. 3-4.)

### *5. Agreements with Clinton County*

Howard avers that Gray "was never involved in the operation of the Clinton County Jail, or in the operations of the Clinton County Sheriff's Department." (Doc. 143-1, ¶ 21.) He further states that "there was never an agreement or understanding between Mr. Gray and anyone associated with Clinton County that the constitutional rights of anyone should be violated." (Doc. 143-1, ¶ 19.)

Plaintiff counters Howard's statements by observing that detainees at the Clinton County Jail were frequently sent to the Regional Jail. However, the citations to the Record for this fact is blank. (Doc. 157, p. 14.) Plaintiff also points to the events at the Clinton County Jail to suggest that there was a meeting of the minds. (Doc. 157, p. 15.) Finally, he contends that Thompson's and Turner's affidavits establish a meeting of the minds between Clinton County and Daviess/DeKalb Counties, (Doc. 157, p. 15), but nothing in those affidavits addresses the issue.

### II. DISCUSSION

Additional discussions of the Record will be necessary, but with this background in place the Court can address Clinton County's motions. A moving party is entitled to summary

judgment on a claim only upon a showing that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *See generally Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984), *cert. denied*, 470 U.S. 1057 (1985). A party opposing a motion for summary judgment may not simply deny the allegations, but must point to evidence in the Record demonstrating the existence of a factual dispute. Fed. R. Civ. P. 56(c)(1); *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909-10 (8th Cir. 2010).

While there are three avenues for establishing municipal liability, the Court need only discuss the second one (unofficial custom) in detail. Plaintiff cannot proceed on a theory that Clinton County maintains unconstitutional policies. In most respects, it is uncontroverted that Clinton County has policies, and Plaintiff does not allege that the policies are unconstitutional. "[A] written policy that is facially constitutional . . . does not itself give rise to municipal liability." *Szabla v. City of Brooklyn Park,* 486 F.3d 385, 392 (8th Cir. 2007) (en banc).

Similarly, there is no need to fully explore inadequate training as a basis for the Regional Jail's liability. Plaintiff attempted to identify factual disputes regarding training and his legal

13

arguments mention this theory, but Plaintiff does not discuss how it applies given the facts in the Record and this is a sufficient reason to reject it. Moreover, the Record would not permit Plaintiff to prevail on this theory. A plaintiff pursuing this theory must demonstrate that (1) the training practices are inadequate, (2) the municipality was deliberately indifferent, and (3) the deficiency in training caused the plaintiff's injury. *E.g., Andrews v. Fowler,* 98 F.3d 1069, 1076 (8th Cir. 1996). As a prerequisite to establishing deliberate indifference, there must be some proof that the County knew the training procedures were inadequate and likely to result in a constitutional violation. *Livers v. Schenck,* 700 F.3d 340, 355-56 (8th Cir. 2012). And, to establish causation, the plaintiff must identify a specific deficiency in any training that actually occurred so that a factfinder can determine whether "the injury [would] have been avoided had the employee been trained under a program that was not deficient in the identified respect[.]" *City of Canton v. Harris,* 489 U.S. 378, 391 (1989). The uncontroverted facts demonstrate that the Regional Jail's officers are trained, and Plaintiff does not identify any inadequacies in the training or any evidence establishing that the Regional Jail knew of any inadequacies in the training.

To prevail, then, Plaintiff must be able to demonstrate that the Regional Jail has an unofficial custom of unconstitutional conduct. As discussed earlier, however, there is no support in the Record that would permit such a finding. The matter is discussed on Count-by-Count basis below.

### A. Count I – Excessive Force

Plaintiff's arguments regarding Count I revolve around his claim that the Regional Jail has a practice of improperly using mace on those in custody. He alleges that the Regional Jail has a practice of "macing" detainees, both as a means of crowd/prisoner control and as a

14

response when medical care is requested.  (Doc. 157, pp. 19, 20.)  However, as discussed in Part I(B)(1) above, the Record does not support Plaintiff's allegations.  At best – and construing the competent evidence in the Record in the light most favorable to Plaintiff – he has demonstrated that mace has been utilized at the Regional Jail.  This fact, alone, does not establish a custom or practice of utilizing mace in an unconstitutional manner.  "[M]ultiple incidents . . . could establish a 'custom' if some evidence indicates that the incidents occurred over a course of time sufficiently long to permit notice of, and then deliberate indifference to or tacit authorization of, the conduct by policymaking officials."  *Johnson,* 725 F.3d at 829.  This is because "[n]otice is the touchstone of deliberate indifference in the context of § 1983 municipal liability," *Atkinson v. City of Mountain View,* 709 F.3d 1201, 1216 (8th Cir. 2013): without multiple incidents, there cannot be notice of anything to the policymaker(s), and thus no deliberate indifference to the unconstitutional conduct.  Therefore, "a custom can be shown only by adducing evidence of a continuing, widespread, persistent pattern of unconstitutional misconduct."  *Jenkins v. County of Hennepin, MN,* 557 F.3d 628, 634 (8th Cir. 2009) (quotation omitted); *see also McGautha v. Jackson County, Mo., Collections Dep't,* 36 F.3d 53, 56 (8th Cir. 1994).

Thompson and Turner have described isolated incidents in which mace has been employed, but have provided insufficient information to determine that the uses were unconstitutional.  This falls short of demonstrating a "continuing, widespread, persistent" pattern of unconstitutional conduct.  *See Mettler v. Whitledge,* 165 F.3d 1197, 1205-06 (8th Cir. 1999) ("Seven complaints, filed between September 1987 and 1993, accuse Haltiner of excessive or unnecessary force, but none of these complaints were sustained after departmental investigation, even in part. . . . [O]nly two complaints against Whitledge . . . accused him of excessive or unnecessary force, and only the May 1986 complaint was sustained in part.").  Like the plaintiff

in *Mettler,* Plaintiff also "has produced no evidence regarding the factual background of these previous complaints, nor has [he] shown that the incidents giving rise to these complaints bear any factual similarity to the" case at bar, other than the general fact that the incidents occurred in Regional Jail. *See id.* Finally, even if Plaintiff has established a factual dispute regarding the existence of a pattern of using mace unconstitutionally, he has not established a factual dispute regarding the Regional Jail's indifference to or authorization of that custom. The fact that there was no investigation or discipline in this case (if true) does not establish a custom.[13]

Plaintiff also seems to rely on (1) Woolsey's involvement in the incident at the Clinton County Jail, (*see* Doc. 157, p. 19), and (2) being thrown onto his shoulder while at the Regional Jail, (Doc. 80, ¶ 26), to support Count I. However, Plaintiff has not identified facts demonstrating uses of force other than as related to the use of mace, nor has he otherwise argued that the Regional Jail has a practice of utilizing excessive force outside that context.

The uncontroverted facts in the Record demonstrate that the first and second elements necessary to a "custom" theory cannot be proven. Therefore, the Regional Jail is entitled to summary judgment on Count I.

### B. Count III – Failure to Intervene

The Regional Jail argues that "even if it is assumed for purposes of this motion that one or more officers of the Regional Jail failed to intervene [to prevent the administration of unconstitutional force], summary judgment . . . is appropriate because there is no evidence that this conduct was the result of an unconstitutional policy or custom." (Doc. 143, p. 9.) In response, Plaintiff contends that "the practice of beating prisoners for sport was so common that

---

[13] Separate and apart from these issues, the Court doubts Plaintiff has presented a claim based on a custom of using mace unconstitutionally. In his argument, Plaintiff repeatedly states that he was maced, but he provides no Record support for this fact. (Doc. 157, p. 19.) In contrast, the deposition excerpt supplied by Defendants suggests that Plaintiff admitted he was not maced. (Doc. 163-1.)

16

many, many detainees complained of the beatings they took – amongst themselves and in official documents including grievances, lawsuits and direct communications with management of the jail. And, the practice of punitively making detainees was so common that many detainees made this complaint." (Doc. 157 p. 24.) This, he contends, constitutes deliberate indifference on the part of the Regional Jail. (Doc. 157, pp. 24-25.) However, as discussed earlier, the Record simply does not support Plaintiff's characterization of the facts. Plaintiff has not pointed to competent evidence in the Record that would permit a jury to find that the Regional Jail has a custom of permitting officers to allow other law enforcement officers (be they from Clinton County or the Regional Jail) to administer "beatings."

### C. Count IV – Conspiracy

Count IV alleges that Clinton County and Daviess/DeKalb County conspired to deprive Plaintiff of his rights. Specifically, he alleges that the counties "formed a plan and/or had a meeting of the minds on February 24, 2012, either at [Plaintiff's mother's house] or at the Clinton County Sheriff's Department" to (1) enter Plaintiff's mother's house "without permission or probable cause," (2) repeatedly use a taser on Plaintiff, (3) "punch[ ] Plaintiff in his left arm repeatedly with such force as to break his arm," and (4) take Plaintiff into custody without probable cause. (Doc. 80, ¶¶ 74-75.) The Regional Jail contends these allegations are insufficient to plead a claim of conspiracy and, even if they are, the Record demonstrates that there is no meeting of the minds between the two counties. Plaintiff argues that his pleading is sufficient, but even if it is not he should be permitted to amend the Second Amended Complaint. He also contends that the Record – primarily, Turner's and Stewart's affidavits – are sufficient to create a factual dispute requiring resolution by a jury. As discussed below, the Court agrees with the Regional Jail.

17

There are four elements to a conspiracy claim under 42 U.S.C. § 1983: (1) two or more defendants conspired (2) with the intent to deprive the plaintiff of rights, (3) an act in furtherance of the conspiracy, and (4) that the plaintiff or his property was injured, or he was deprived of exercising his rights or privileges as a United States citizen. *E.g., Barstad v. Murray County,* 420 F.3d 880, 887 (8th Cir. 2005). "A conspiracy claim requires evidence of specific facts that show a 'meeting of minds' among conspirators" and "requires at least two persons." *Id.* Here, Plaintiff only alleges, in a conclusory manner, that Clinton County and Daviess/DeKalb County "reached an understanding, acted in concert, and engaged in a course of conduct together and otherwise conspired among themselves to deprive Plaintiff of his rights under the United States Constitution . . . ." (Doc. 80, ¶ 73.) These conclusory allegations are insufficient to plead a conspiracy claim. Plaintiff requests leave to amend his pleading to conform to the evidence, but the Rule permitting such amendments applies to evidence introduced at trial. Fed. R. Civ. P. 15(b).

More importantly, Plaintiff has identified no "evidence" of a meeting of the minds to which the pleadings can conform. Plaintiff contends "there was a pattern and practice of taking detainees to [the Regional Jail] from Clinton County, particularly where medical care was required" and that "the deputies at Clinton [County] made it clear that a policy existed to send detainees that were hurt to" the Regional Jail and that the Regional Jail "covered up the beatings that Clinton County jailers were meting out to prisoners by accepting their injured detainees into the jail." (Doc. 157, p. 25.) This is not a fair description of the Record; that is, nothing in the Record supports these facts. Moreover, assuming for the sake of argument that Plaintiff has fairly described the Record, this is not the claim asserted in Count IV. Count IV alleges that the two counties conspired to (1) unlawfully enter the house where Plaintiff lived, (2) administer a

taser, (3) arrest him, and (4) administer excessive force at the Clinton County Jail. (Doc. 80, ¶ 75.) Count IV does not mention an agreement to transport prisoners to the Regional Jail to deprive them of any rights, nor does it mention medical care.

The Record would not permit a jury to find that Clinton County conspired with the Regional Jail to deprive Plaintiff of his rights in the manner described in Count IV. Accordingly, the Regional Jail is entitled to summary judgment on Count IV.

### D. Count V – Deliberate Indifference to Serious Medical Needs

Similar to its arguments on the other counts, the Regional Jail argues that the Record will not permit a jury to find that there was persistent pattern of the Regional Jail depriving detainees of care for serious medical needs, much less that its policymaker was aware of such a pattern. (Doc. 143, p. 12.) Plaintiff's argument pursues two themes: (1) Plaintiff was deprived of medical care for his serious medical needs, and (2) Turner and Thompson were similarly taken to the Regional Jail. (Doc. 157, p. 26.) However, Thompson does not allege that the Regional Jail deprived him of medical care. (Doc. 157-7.) Turner only opines that other detainees at the Regional Jail "frequently" would not get the care they asked for and does not establish that anyone's constitutional right to medical care was violated. (Doc. 157-2, ¶ 8.)

Even if the Record demonstrated jailers at the Regional Jail have a practice of not seeking medical assistance, Plaintiff specifically alleges that the jailers contacted Dr. Glynn. In fact, Count V is directed more at Dr. Glynn's recommendation than any failing on the part of the jailers. Therefore, even if the Regional Jail has an unconstitutional practice whereby jailers do not obtain instructions from a doctor when faced with a detainee's serious medical needs, Plaintiff's allegations demonstrate that he was not harmed by that practice.[14]

---

[14] The Second Amended Complaint included Dr. Glynn as a defendant (in his official capacity, because like the other Defendants he was not named in his individual capacity), but the claims involving Dr. Glynn were dismissed

19

### III.  CONCLUSION

For Plaintiff to prevail on his claims against the Regional Jail, a jury must believe, among other things, that there was a continuing, widespread, persistent pattern of unconstitutional misconduct by officers at the Regional Jail.  A jury must also believe that the Regional Jail was deliberately indifferent to, or tacitly authorized, this pattern of misconduct.  The evidence establishes that neither of these two elements can be proved, and Plaintiff has not identified any evidence in the Record that creates a factual dispute on these two points.  Therefore, the Regional Jail's motions for summary judgment, (Doc. 126, Doc. 142), are **GRANTED.**

**IT IS SO ORDERED.**


                                        /s/ Beth Phillips_____
                                        BETH PHILLIPS, JUDGE
DATE: February 23, 2017                 UNITED STATES DISTRICT COURT

---

by agreement of the parties.  (Doc. 160; Doc. 162.)

20